

**WORLDVENTURES**
**CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT**

This Employee Confidentiality and Proprietary Rights Agreement (**"Agreement"**) is entered into by and between WorldVentures Holdings, LLC, (the **"Employer"**) on behalf of itself, its subsidiaries and other corporate affiliates (collectively referred to herein as the **"Employer Group"**), and Eddie Head (the **"Employee"**) (the Employer and the Employee are collectively referred to herein as the **"Parties"**) as of Oct 4, 2018 (the **"Effective Date"**).

In consideration of the Employee's employment by the Employer, which the Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, the Employer and the Employee hereby agree as follows:

1. **Confidentiality and Security.**

    a. Confidential Information

    The Employee understands and acknowledges that during the course of employment by the Employer, Employee will have access to and learn about confidential, secret and proprietary documents, materials and other information, in tangible and intangible form, of and relating to the Employer and its businesses (**"Confidential Information"**). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee might cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

    For purposes of this Agreement, Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, customer lists, client information, client lists, sales representative information, sales representative lists and genealogies, distributor lists, and buyer lists of the Employer or its businesses, or of any other person or entity that has entrusted information to the Employer in confidence.

    The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be

confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that Confidential Information developed by Employee in the course of Employee's employment by the Employer shall be subject to the terms and conditions of this Agreement as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

b. Disclosure and Use Restrictions

The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer and, in any event, not to anyone outside of the direct employ of the Employer except as required in the performance of the Employee's authorized employment duties to the Employer and only with the prior consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall promptly provide written notice of any such order to an authorized officer of the Employer.

c. Duration of Confidentiality Obligations

The Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after the commencement of employment by the Employer) and shall continue during and after the termination of employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2. **Proprietary Rights.**

a. Work Product

The Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries and other work product of any nature whatsoever, that are created,

prepared, produced, authored, edited, amended, conceived or reduced to practice by the Employee individually or jointly with others during the period of Employee's employment by the Employer (or completed within six (6) months thereafter, with respect to any specific work product that was substantially begun during the Employee's period of employment by the Employer) and relating in any way to the business or contemplated business, research or development of the Employer (regardless of when or where the work product is prepared or whose equipment or other resources is used in preparing the same) and all printed, physical and electronic copies and other tangible embodiments thereof (collectively, **"Work Product"**), as well as any and all copyright, trade secret, trademark (and related goodwill), patent and other intellectual property rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefore, and continuations, divisions, continuations-in-part, reissues, extensions and renewals thereof (collectively, **"Intellectual Property Rights"**), shall be the sole and exclusive property of the Employer.

For purposes of this Agreement, Work Product includes, but is not limited to, Employer information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, sketches, market studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, specifications, customer information, client information, customer lists, client lists, sales representative information, sales representative lists and genealogies, marketing information, advertising information, and sales information.

b. Work Made for Hire; Assignment

The Employee acknowledges that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter shall be deemed "work made for hire" as defined in 17 U.S.C. § 101, in which copyrights are therefore owned by the Employer. To the extent that the foregoing does not apply, the Employee hereby irrevocably assigns and agrees to assign to the Employer the Employee's entire right, title and interest in and to all Work Product and Intellectual Property Rights, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Employer's rights, title or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than that the Employer would have had in the absence of this Agreement.

c. Execution of Documents

The Employee agrees to execute and deliver to the Employer any and all applications, oaths, declarations, affidavits, waivers, assignments and other documents and instruments as shall be requested by the Employer (either during or after the Employee's employment) to obtain, perfect, transfer to the Employer or enforce any of the aforementioned rights in any jurisdiction throughout the world, and to render all lawful assistance in connection with the same. The Employee hereby irrevocably grants the Employer power of attorney to execute and deliver any such documents on the Employee's behalf and in Employee's name, to the full extent permitted by law, if the Employee does not promptly cooperate with the Employer's request for such documents (without limiting the rights the Employer shall have in such circumstances by operation of law).

d. No License

The Employee understands that this Agreement does not, and shall not be construed to, grant the Employee any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software or other tools made available to Employee by the Employer.

3. **Security**

    a. Security and Access

    The Employee agrees and covenants (i) to comply with all Employer security policies and procedures as in force from time to time including without limitation those regarding computer equipment, telephone systems, voicemail systems, facilities access, monitoring, key cards, access codes, Employer Group intranet, internet, social media and instant messaging systems, computer systems, e-mail systems, computer networks, document storage systems, software, data security, encryption, firewalls, passwords and any and all other WorldVentures Holdings, LLC facilities, IT resources and communication technologies (**"Facilities Information Technology and Access Resources"**); (ii) not to access or use any Facilities and Information Technology Resources except as authorized by Employer; and (iii) not to access or use any Facilities and Information Technology Resources in any manner after the termination of the Employee's employment by the Employer, whether termination is voluntary or involuntary. The Employee agrees to notify the Employer promptly upon learning of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction or reverse engineering of, or tampering with any Facilities and Information Technology Access Resources or other Employer property or materials by others.

    b. Exit Obligations

    Upon (i) voluntary or involuntary termination of the Employee's employment or (ii) the Employer's request at any time during the Employee's employment, the Employee shall (a) provide or return to the Employer any and all Employer Group property, including keys, key cards, access cards, identification cards, security devices, employer credit cards, network access devices, computers, cell phones, smartphones, PDAs, pagers, fax machines, equipment, speakers, webcams, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, tapes, disks, thumb drives or other removable information storage devices, hard drives, and data and all Employer documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer or any of its business associates or created by the Employee in connection with Employee's employment by the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer Group devices, networks, storage locations and media in the Employee's possession or control.

4. **Publicity.**

Employee hereby consents to any and all uses and displays, by the Employer and its agents, of the Employee's name, voice, likeness, image, appearance and biographical information in, on or in connection with any pictures, photographs, audio and video recordings, digital images, websites, television programs and advertising, other advertising, sales and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes and all other printed and electronic forms and media throughout the world, at any time during or after the period of Employee's employment by

the Employer, for all legitimate business purposes of the Employer **("Permitted Uses")**. Employee hereby forever releases the Employer and its directors, officers, employees and agents from any and all claims, actions, damages, losses, costs, expenses and liability of any kind, arising under any legal or equitable theory whatsoever at any time during or after the period of Employee's employment by the Employer, in connection with any Permitted Use.

5. **Non-Disparagement.**

    The Employee agrees and covenants that Employee will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors, sales representatives, and other associated third parties. This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. The Employee shall promptly provide written notice of any such order to an authorized officer of the Employer.

6. **Acknowledgment.**

    The Employee acknowledges and agrees that the services to be rendered by Employee to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. The Employee further acknowledges that the amount of Employee's compensation reflects, in part, Employees' obligations and the Employer's rights under this Agreement; that Employee has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that Employee will not be subject to undue hardship by reason of Employee's full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

7. **Remedies.**

    In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

8. **Successors and Assigns.**

    a. Assignment by the Employer

        The Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by

purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer and permitted successors and assigns.

   b. No Assignment by the Employee

   The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

9. **Governing Law; Jurisdiction and Venue.**

   This Agreement, for all purposes, shall be construed in accordance with the laws of Texas without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of Texas, county of Collin. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

10. **Entire Agreement.**

    Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

11. **Modification and Waiver.**

    No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by an Executive of the Employer (other than the Employee). No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

12. **Severability.**

    Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law. The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such

provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

13. **Captions.**

    Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

14. **Counterparts.**

    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

15. **Non-Solicitation.**

    The Employee agrees that during the term of employment with the Employer and for a period of one (1) year following voluntary or involuntary termination of the Employee's employment from the Employer (the "Separation Date"), the Employee will not:

    - directly or indirectly (except on behalf of the Employer), solicit or attempt to solicit, accept business from, divert or attempt to divert, handle or attempt to handle, or service or attempt to service, the account or business of any entity or individual:
        (i) that was a party to a contract with the Employer with which the Employee dealt or worked during the six-month period prior to the Separation Date, or
        (ii) that was directly solicited by the Employer with the Employee's involvement or assistance during the six-month period prior to the Separation Date, with a view toward establishing a business relationship,

    or assist any other person in doing any of the foregoing; or

    - directly or indirectly recruit, solicit or hire any employee or independent contractor of the Employer, or induce or attempt to induce any such employee or independent contractor to terminate his/her/its contract or employment, or otherwise to limit or to cease the relationship of such employee or independent contractor with the Employer, or assist any other person in doing any of the foregoing; or

    - directly or indirectly interfere or attempt to interfere in any way with the Employer's relationships with any of its customers, clients, sales representatives, suppliers, advisors, consultants, including, without limitation, by inducing or attempting to induce any customers, clients, sales representatives, suppliers, advisors, or consultants to terminate or change the terms of their dealings with the Employer, or assist any other person in doing any of the foregoing.

16. **E-Signature.**

    This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original Electronic Signature ("E-Signature"). For purposes of this Agreement, the Agreement is "signed" or "executed" if it includes a symbol or action that is adopted or performed by the signer with the present intent to authenticate, manifest acceptance of or assent to the Agreement consistent with the Electronic Signatures in Global and National Commerce Act (ESIGN) of 2000. If an E-Signature is affixed below through the use of an E-Signature application, it shall be deemed

to be an original signature as if handwritten below and no certification authority or other third- party verification is necessary to validate the E-Signature of any party or any agreement between the parties resulting from an E-Signature.

Captions and section headings used in this Agreement are for convenience only and are not part of this Agreement and shall not be used in construing it.

We have carefully reviewed this contract and agree to and accept its terms and conditions. We are executing this Agreement as of the day and year first written above.

| **Employee** | **Company** |
|---|---|
| Signature: *Eddie Head* <br> Eddie Head (Oct 4, 2018) | Signature: *Janet S. Weil* <br> Janet S. Weil (Oct 4, 2018) |
| Name: Eddie Head | Name: Janet S. Weil |
| Date Signed: Oct 4, 2018 | Title: General Counsel |
| | Date Signed: Oct 4, 2018 |