## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re | § | **Chapter 11** |
| | § | |
| **SPHERATURE INVESTMENTS LLC,** | § | **Case No. 20-42492** |
| ***et al.*,[1]** | § | |
| | § | **Jointly Administered** |
| Debtors. | § | |

| | | |
|---|---|---|
| **SPHERATURE INVESTMENTS, LLC,** | § | **Adversary No. 21-04059** |
| ***et al.* d/b/a WORLDVENTURES** | § | |
| **HOLDINGS, LLC,** | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| **SEACRET DIRECT LLC,** | § | |
| | § | |
| Defendant. | § | |

### SEACRET DIRECT LLC'S MOTION TO DISMISS AMENDED COMPLAINT AND, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

**No hearing will be conducted on this motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading *WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE* shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

---

[1] The "Debtors" and the "Plaintiffs" in the above-captioned cases are:  Spherature Investments LLC ("Spherature") EIN#5471; Rovia, LLC ("Rovia") EIN#7705; WorldVentures Marketing Holdings, LLC ("WV Marketing Holdings") EIN#3846; WorldVentures Marketplace, LLC ("WV Marketplace") EIN#6264; WorldVentures Marketing, LLC ("WV Marketing") EIN#3255; WorldVentures Services, LLC ("WV Services") EIN#2220.

---

**SEACRET DIRECT LLC'S MOTION TO DISMISS AMENDED COMPLAINT
AND , IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**

**PAGE 1 OF 21**

Seacret Direct, LLC ("Seacret"), subject to and without waiving its pending *Motion to Compel Arbitration, Motion to Dismiss Complaint, and Request for Preliminary Injunction* [Docket No. 4](the "Arbitration Motion"), moves to dismiss Plaintiff's *Amended Complaint and Request for Preliminary Injunction* [Docket No. 6](the "Amended Complaint" and cited herein as "Am. Compl."), under Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted. In the alternative, Seacret moves for a more definite statement under Federal Rule of Civil Procedure 12(e), made applicable by Federal Rule of Bankruptcy Procedure 7012.

## I.     INTRODUCTION

1.     As has now been made obvious in the Amended Complaint, this adversary proceeding involves a commercial dispute regarding the Limited Solicitation Agreement (the "LSA")[2] between Seacret, a network marketing company that sells lifestyle products and services, and Spherature, WV Marketing and various of their affiliates, which sell travel club memberships under the "WorldVentures" trade name. The majority of the factual allegations in the Amended Complaint simply reflect (albeit in sinister terms) that Seacret is organizing a travel component to add to its network marketing business.  There is nothing actionable or illegal about starting a travel business.  Rather, the Plaintiffs allege that Seacret engaged in an elaborate and far-fetched conspiracy to "steal" their travel business by subterfuge in entering the LSA (Am. Compl. ¶¶ 13, 39 and 43) and acting outside the authority granted in the LSA (Am. Compl. ¶¶ 38 and 62).  In what is clearly an alternative argument (although presented as the "primary purpose of the lawsuit" in an effort to avoid arbitration), WV Marketing effectively admits that it

---

[2] The LSA is attached as Exhibit 7 to the Amended Complaint [Dkt # 6-7].

freely undertook contractual obligations in the LSA that allowed Seacret to do what it did, but Seacret did not pay enough for the contract, rendering it constructively fraudulent.

2.      As Seacret argues in the Arbitration Motion, the Plaintiffs have asserted their claims in the wrong venue, and this Court should compel arbitration of the entirety of this dispute in accordance with the enforceable and broadly-worded dispute resolution provisions found in the LSA and the Co-Marketing Agreement dated July 22, 2020 (the "CMA,"[3] and together with the LSA, the "Agreements"). [4]

3.      But in the event this Court declines to compel arbitration of any of the Plaintiff's claims, this Court should dismiss those claims or otherwise require the Plaintiffs to replead them. Indeed, every single one of the Plaintiffs' claims in the Amended Complaint is legally deficient, either because it relies on the wrong choice of law; it is conclusory, threadbare, and is not supported by sufficient factual allegations to satisfy the applicable pleading standard; or it is contradicted by the Amended Complaint itself.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction to hear this matter under 28 U.S.C. § 1334 and the standing order of reference from the District Court. Seacret, however, does not concede that this Court has constitutional authority to enter final orders in this adversary case or that this adversary case is a core proceeding.

5.      Absent the agreed dispute-resolution provisions in the CMA and LSA, venue would be proper in this District under 28 U.S.C. § 1409.

---

[3] The CMA is attached as Exhibit 5 to the Amended Complaint [Dkt # 6-5].
[4] Seacret believes that the request to compel arbitration in the Arbitration Motion is still active as to claims pled in the Amended Complaint and has not been made moot by the filing of the Amended Complaint. To the extent necessary, however, Seacret hereby adopts the Arbitration Motion for purposes of compelling arbitration of the claims pled in the Amended Complaint.

### III.    <u>MOTION TO DISMISS</u>

6.      If, despite the parties' express written agreement to arbitrate, this Court declines to order the parties to arbitration, Seacret moves to dismiss the Amended Complaint in its entirety.

### <u>Applicable Law</u>

**A.      WV must state a claim upon which relief can be granted.**

7.      Federal Rule of Civil Procedure ("<u>FRCP</u>") 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure ("<u>FRBP</u>") 7012, provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), set the standard that a complaint must meet to survive a motion to dismiss under FRCP 12(b)(6). *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). Both the *Iqbal* and *Twombly* decisions emphasize that a claim for relief under FRCP 8 must provide sufficient facts to state a claim for relief that is "plausible on its face." *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

8.      The question of whether a claim is "plausible" is "context-specific, requiring the reviewing court to draw on its experience and common sense." *See Iqbal,* 556 U.S. at 663-64. According to the Supreme Court, the plausibility standard is not the same as a "probability requirement," but requires more than a "sheer possibility that a defendant has acted unlawfully." *See Id*. at 678. A claim has "facial plausibility" if the moving party pleads factual content that allows the court to draw a "reasonable inference" that the non-moving party is liable for the misconduct alleged. *See Id*. at 678. In the context of Rule 12(b)(6), this Court must accept all well-pleaded facts in the Amended Complaint as true and view all facts in the "light most

favorable to the plaintiff." *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). But mere "threadbare recitals" of the elements of a cause of action that are supported by conclusory statements are not sufficient. *See Iqbal*, 556 U.S. at 678. Rather, legal conclusions must be "supported by factual allegations." *Id.* at 679.

**B.**      **Some of the Plaintiffs' claims are also subject to the heightened pleading standard under Rule 9.**

9.      FRCP 8, which governs pleading requirements, is incorporated into Bankruptcy Rule 7008. In relevant part, FRCP 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

10.      FRCP 9(b), made applicable here by FRBP 7009, imposes a heightened pleading standard for allegations of fraud, including the constructive fraud claims alleged by WV. *See* Fed. R. Civ. P. 9(b) ("[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). In order to satisfy the FRCP 9(b) heightened pleading standard, the Plaintiffs "must plead the who, what, when, where, and why as to the [alleged] fraudulent conduct." *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 117 (5th Cir. 2019) (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

<u>Argument</u>

**A.      Claim Pled by all Plaintiffs (Aiding and Abetting Breach of Fiduciary Duty)**

**(i)      The Court should dismiss Cause of Action Five (Aiding and Abetting Breach of Fiduciary Duty) because it does not move under the correct state law, fails to include sufficient factual allegations related to the alleged fiduciary duties or Seacret's knowledge or participation in breaching such duties, and fails to join a required party.**

11.      Cause of Action Five (aiding and abetting breach of fiduciary duty) is the only claim asserted by all of the Plaintiffs.  This is notable because in contesting the Arbitration

Motion, the Plaintiffs have argued that arbitration is improper because some of the Plaintiffs are not subject to arbitration.  But as shown below, in reality at most one of the Plaintiffs has a possible claim for aiding and abetting, and the remainder were added in an attempt to avoid arbitration.

12.     Under Nevada law,[5] applicable herein because the Plaintiffs are all Nevada entities, in order to assert a claim for aiding and abetting a breach of fiduciary duty the Plaintiffs must assert: "four required elements:  (1) there must be a fiduciary relationship between two parties, (2) that the fiduciary breached, (3) the defendant third party knowingly and substantially participated in or encouraged that breach, and (4) the plaintiff suffered damage as a result of the breach." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 812-13, 35 P.3d 190, 198 (2014).

13.     The only party alleged to have breached a fiduciary duty in the Amended Complaint is Eddie Head.  As the Court is aware, the Plaintiffs have sued Mr. Head in a mirror lawsuit before this Court.   However, the Amended Complaint fails to allege facts that demonstrate a fiduciary relationship between Mr. Head and the Plaintiffs, other than Spherature. Paragraphs 4 and 28 of the Amended Complaint allege that Head was Spherature's President and Chief Strategy Officer.  But the Amended Complaint is silent as to any relationship between Mr. Head and the other Plaintiffs, fiduciary or otherwise. To the contrary, the Court will take judicial

---

[5] While the Fifth Circuit has not decided whether the forum or federal choice-of-law rules apply, most bankruptcy courts in Texas "apply choice-of-law rules of the forum in which they sit over state-law claims that do not implicate federal policy." *ASARCO LLC v. Ams. Mining Corp.*, 382 B.R. 49, 60-61 (S.D. Tex. 2007) (collecting cases); *see also Moser v. Navistar Int'l Corp.*, Civil Action No. 4:17-CV-00598, 2019 U.S. Dist. LEXIS 31694, at *12 (E.D. Tex. Feb. 28, 2019) (collecting cases). Under a Texas state choice-of-law analysis, "actions involving the internal affairs of a foreign corporation are governed by the law of the state of incorporation." Tex. Bus. Orgs. Code § 1.105; *see also In re Dexterity Surgical, Inc.*, 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007). Under Texas's and Arizona's choice-of-law rules, the state of incorporation determines fiduciary duties. *See Reed v. Linehan (In re Soporex, Inc.), 463* B.R. 344, 404 (Bankr. N.D. Tex. 2011); *CLN Props., Inc. v. Republic Servs.*, 688 F. Supp. 2d 892, 897 (D. Ariz. 2010); *Amerco v. Shoen,* 184 Ariz. 150, 152 n. 1, 907 P.2d 536, 538 n. 1 (Ct. App. 1995); Restatement 2d of Conflict of Laws, § 309 (2nd 1988). Therefore, **Nevada** law (the state of incorporation for all of the Plaintiffs) determines Count Five. Am. Compl. ¶ 20.

---

notice that in the preliminary injunction hearing against Mr. Head, Spherature's general counsel (Eric Haynes) testified repeatedly that Mr. Head was not an employee of WV Marketing and only had an employment contract with Spherature. *See also* Exh. 3 to the Amended Complaint. Similarly, the Court should take judicial notice that—again other than Spherature—Mr. Head does not appear on the Statement of Financial Affairs of any Plaintiff[6] even though Question 28 of the SoFAs requires each Plaintiff to "list the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case."[7] *See Basic Cap. Mgt, Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588-89 (5th Cir. 2020) (the court may take judicial notice pursuant to F.R.E. 201 at a Rule 12(b)(6) hearing). The Plaintiffs have utterly failed to plead facts that demonstrate Mr. Head owed fiduciary duties to them under Nevada law.

14.     Further, Nevada law—like Delaware law—allows for nearly complete freedom of contract in an LLC operating agreement including waiving fiduciary duties and limiting liability for any breach of such duty. NV Rev Stat § 86.286(5) & (7) (2011). *See also* Keith Paul Bishop, <u>Fiduciary Duties and the Nevada LLC</u>, Cal. Corp. & Sec. Law (July 11, 2012) (located at: https://www.calcorporatelaw.com/2012/07/fiduciary-duties-and-the-nevada-llc). Thus, the Amended Complaint's failure to cite the Plaintiffs' LLC operating agreements and the applicable duties therein, but rather providing a laundry list of general fiduciary duties, fails to state an actionable claim.

15.     Further, the Amended Complaint does not state in non-conclusory terms how Seacret knowingly and substantially participated in or encouraged a breach. In fact, the Plaintiffs

---

[6] Rovia [Case No. 20-42493; Dkt # 26]; WV Marketing [Case No. 20-42494; Dkt # 36]; WV Services [Case No. 20-42497; Dkt # 20]; WV Marketing Holdings [Case No. 20-42495; Dkt # 20].
[7] To remind the Court, the Petition Date for all Plaintiffs was December 21, 2020 and Mr. Head left Spherature on January 14, 2021.

themselves do not seem to know how Mr. Head owed them fiduciary duties or what duties he owed, so something more than a bald allegation is required to plead that Seacret knew that the Plaintiffs were owed duties and participated in breaching them.

16.    In sum, the Plaintiffs allege that they are each a plaintiff with respect to Cause of Action Five. Cause of Action Five alleges only general harm to the Plaintiffs, while disregarding their corporate separateness. This type of general harm does not meet the requisite pleading standard as it has not been sufficiently alleged that each Plaintiff is entitled to relief. *See* FED. R. CIV. P. 8(a)(2); *see also Greene v. Mobil Oil Corp.*, 188 F.R.D. 430, 432 (E.D. Tex. 1999) ("[n]owhere . . . has there been a short, concise statement of any *individual* plaintiff as to the type of damages claimed, the party or parties responsible, [or] the act, omissions, or emissions of a *specific* defendant causing such damages") (emphasis added). As to Count 5, the Plaintiffs fail to meet the requisite pleading standard and state actionable claims due to the general, non-specific allegations.

17.    Finally, pursuant to FRCP 12(b)(7), the Plaintiffs' failure to join Head should result in the dismissal of this cause of action. *See Two Shields v. Wilkinso*n, 790 F.3d 791, 798 (8th Cir. 2015) (finding the party allegedly breaching its fiduciary duty should be joined in a suit alleging aiding and abetting breach of fiduciary duty).

**B.    Claims Pled by Spherature and WV Marketing (Harmful Access by Computer, Conversion and Misappropriation of Effort)**

**(i)    The Court should dismiss Cause of Action Seven (Harmful Access by Computer) because it states the wrong choice of law and is negated by the facts contained in the Amended Complaint.**

18.    All of the agreements that govern the relationship between Seacret, WV Marketing and Spherature (and that are referenced liberally throughout the Amended Complaint) contain choice-of-law provisions stating that they are governed by *Arizona* law without giving

effect to choice-of-law rules.[8] This Court is therefore required to apply Arizona law. Both the federal and Texas's choice-of-law rules require courts to apply the law of the contractual choice-of-law provisions. *See Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) ("In Texas, contractual choice-of-law provisions are typically enforced.") (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990)); s*ee also Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). Arizona law is the applicable law with respect to the relationship between the parties.

19.     Therefore, claims based on Texas state law, including "Harmful Access by Computer," which do not have corresponding causes of action under Arizona law, should be dismissed. *See Tessier v. H.S. Anderson Trucking Co.,* 713 F.2d 135, 136 (5th Cir. 1983).

20.     Additionally, the LSA specifically authorizes the complained of computer access. Dismissal under Rule 12(b)(6) is appropriate when a successful affirmative defense is conclusively established on the face of the Amended Complaint. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). In the context of a motion to dismiss the Court may consider items attached to the Amended Complaint. *See Gines v. Horton*, 699 F.3d 812, 820 (5th Cir. 2012). Here, the LSA, attached to the Amended Complaint as Exhibit 7, provides that Seacret is permitted access to the relevant database and intellectual property. LSA §§ 1.3 & 11.1.

**(ii)     The Court should dismiss Cause of Action Eight (Conversion) because it is negated by the facts contained in the Amended Complaint.**

21.     In order to state a claim for conversion under Arizona law, Spherature and WV Marketing must assert "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to

---

[8] LSA § 13.7; CMA § 13.7; Letter of Intent p. 7 (attached to the Amended Complaint as Exhibit 6 [Dkt # 6-6]).

pay the other the full value of the chattel." *Universal Mktg. & Entm't v. Bank One of Ariz., N.A.*, 203 Ariz. 266, 268, 53 P.3d 191, 193 (Ct. App. 2002).

22.     Again, this Court must consider the terms of the LSA and dismiss the conversion claim because of an affirmative defense apparent on the face of the Amended Complaint. Here, it is clear from the Amended Complaint (and attached LSA) that Spherature and WV Marketing consented to the so-called "conversion." LSA §§ 1.3 & 11.1.  Consent is an affirmative defense to conversion. *See Scott v. Allstate Ins. Co.*, 553 P.2d 1221, 1225 (1976) ("an act which would otherwise constitute a conversion may be precluded from having that effect by the plaintiff's consent to the act, either express or implied.").

23.     Further, the Amended Complaint conspicuously fails to allege any facts as to how Seacret was able to convert Spherature and WV Marketing's property, which Seacret representatives did the converting or when they did so.  The answer, of course, is that Spherature and WV Marketing provided any "converted" property to Seacret themselves.  The conversion allegations are conclusory and made up out of whole cloth.

**(iii)     The Court should dismiss Cause of Action Nine (Misappropriation of Effort) because it seeks to recover for a cause of action that is not actionable under Arizona law.**

24.     Like the Harmful Access by Computer claim, the "misappropriation of effort" cause of action also does not appear to be an actionable cause of action under Arizona law, and such should be dismissed. *See Tessier v. H.S. Anderson Trucking Co.,* 713 F.2d 135, 136 (5th Cir. 1983). Likewise, the LSA specifically authorizes any complained of actions and, therefore, such claim must be dismissed. *See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006).

**C.     Claim Pled by Spherature, WV Marketing and Rovia (Tortious Interference)**

**(i)     The Court should dismiss Cause of Action Four (Tortious Interference With Contracts) because it does not move under the correct law, fails to include sufficient factual allegations related to the contractual relationships at issue and Seacret's involvement with the same, and is contradicted by the LSA.**

25.     Under Arizona law, in order to state a claim for tortious interference with an existing contract the "plaintiff must show [1] the existence of a valid contractual relationship or business expectancy; [2] the interferer's knowledge of the relationship or expectancy; [3] intentional interference **inducing or causing a breach or termination** of the relationship or expectancy; and [4] **resultant damage** to the party whose relationship or expectancy has been disrupted. . . . [5] In addition, **the interference must be improper as to motive or means** before liability will attach." *Neonatology Assocs. v. Phx. Perinatal Assocs.*, 216 Ariz. 185, 164 P.3d 691 (Ct. App. 2007) (internal citations omitted) (emphasis added); *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 34, 730 P.2d 204, 211 (1986).

26.     There are three specific contracts or types of contracts identified in the Amended Complaint that appear to be the subject of Cause of Action Four:   Mr. Head's Employment agreement; an contract with one of or some combination of Grouply/Trask/Top Tier; and Sales Representative agreements.

27.     Regarding Mr. Head's employment contract, the Court will take judicial notice from the hearing on the preliminary injunction against Mr. Head that the prohibition in LSA § 1.5, which prevented Seacret from hiring Mr. Head (among others). was waived in writing by Spherature's general counsel (Eric Haynes) to allow Seacret to hire Mr. Head.  The Amended Complaint fails to mention this inconvenient fact at all.   Rather, the Amended Complaint continues the head-in-the-sand narrative from the Original Complaint that Mr. Head just "resurfaced" at Seacret somehow.  Am. Compl. ¶ 45.  But the undisputed fact that Spherature

allowed, and even encouraged, Seacret to hire Mr. Head complicates the pleading here.  The Amended Complaint does not allege facts that Seacret induced or caused a breach or termination of Mr. Head's contract in light of Mr. Haynes' express permission to hire him. The Amended Complaint also does not allege improper means or motive by Seacret, again in light of Mr. Hayne's express permission to hire him.

28.     Regarding the Grouply/Trask/Top Tier contract (Am. Compl. ¶ 56), the Amended Complaint does not allege facts that Seacret induced or caused a breach or termination of the contract, or that the contract was breached or terminated at all. The Amended Complaint also does not allege any damage from whatever Seacret did to the Grouply/Trask/Top Tier contract. The Amended Complaint also does not allege improper means or motive by Seacret.

29.     Regarding the Sales Representatives agreements, the LSA expressly allows Seacret to solicit the Sales Representatives. LSA §§ 1.1, 1.2 and 1.3.  In fact, the Amended Complaint acknowledges that the LSA allows Seacret to solicit the Sales Representatives. Am Compl. ¶ 36. Thus, there is no claim for tortious interference with the Sales Representatives' agreements based on the facts alleged in the Amended Complaint itself.

30.     Further, although some contracts are stated with specificity and addressed above, the Amended Complaint's tortious-interference claim fails as it relates generally to contracts with "employees," "vendors/suppliers ... and for Members/customers." Compl. ¶ 96. As it is not clear what contract or contracts are in dispute, the remaining requirements for the foregoing claim have not been met.

D.    **Claim pled by Spherature only (Trademark Infringement)**

(i)    **The Court should dismiss Cause of Action Six (Trademark Infringement) because it does not plead sufficient facts and is negated by the facts contained in the Amended Complaint.**

31.    To state a claim for trademark infringement, a plaintiff must allege that another person has used "(1) any reproduction, counterfeit, copy or colorable imitation of a mark (2) without the registrant's consent (3) in commerce (4) in connection with the sale, offering for sale, distribution or advertising of any goods (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Svc. Merchandise Co. v. Svc. Jewelry Stores, Inc.*, 737 F. Supp. 983, 991 (S.D. Tex. 1990); 15 U.S.C. § 1114(1).

32.    Spherature fails to state a claim for trademark infringement because it failed to include the required factual allegations to support such a claim. Additionally, the trademark infringement claim is negated by the Amended Complaint itself and must be dismissed.

33.    Spherature has failed to allege specific facts regarding how Seacret violated its trademarks. Instead, the Amended Complaint references a third party that is, without explanation, then deemed a "proxy" of Seacret. Am. Compl. ¶¶ 51, 52 and 60. In another paragraph, Spherature is reduced to making allegations "upon information and belief" because Seacret admittedly never actually used any of Spherature's trademarks, raising the obvious question of how it infringed them. Am. Compl. ¶ 50.

34.    Finally, the entire trademark infringement theory fails because the LSA, which is attached to the Amended Complaint, provides a license to use trademarks in section 11.1. Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See Gines v. Horton,* 699 F.3d 812, 820 (5th Cir. 2012); *see also Kaye v. Lone Star Fund V (U.S.), L.P.,* 453

B.R. 645, 662 (N.D. Tex. 2011). *See also* Am. Compl. ¶ 23, n 2.  So the Amended Complaint itself negates the elements of the alleged infringement claim.

**E.      Claims pled by WV Marketing Only (Constructive Fraud)**

**(i)      The Court should dismiss Cause of Action One (11 U.S.C. § 548) because it fails to include sufficient factual allegations.**

35.      Section 548(a)(1)(B) of the Bankruptcy Code allows a debtor to "avoid any transfer…of an interest of the debtor in property, or any obligation…incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" if the debtor (i) received less than reasonably equivalent value for such transfer or obligation; and (ii) was insolvent at the time of such transfer or obligation, or as a result of such transfer or obligation, under various insolvency tests. 11 U.S.C. § 548(a)(1)(B).

36.      Cause of Action One of the Amended Complaint seeks only to avoid what are defined as the "Fraudulent Obligations" Am. Compl. ¶ 36.  The Fraudulent Obligations are "certain limited rights" that WV Marketing granted to Seacret in accordance with the LSA to "(a) solicit WV Marketing's exclusive network of Sales Representatives to sell Seacret's line of dietary, nutritional, and skincare products, (b) access certain Confidential Information, including one of WV Marketing's most critical revenue-generating assets: the Exigo database containing the entirety of WV Marketing's downline sales network, and (c) allegedly waive non-solicit provisions with its Sales Representatives solicited by Seacret." Id.  Section 548(a)(1), of course, allows for the avoidance of both *transfers* of a debtor's interest in property and *obligations* incurred by the debtor.  Count One of the Amended Complaint properly acknowledges that the so-called Fraudulent Obligations are, at best, contractual obligations incurred under the LSA, and not transfers of property. *See U.S. Bank N.A. v. Verizon Comm., Inc.*, No. 3:10-CV-1842-G, 2012 U.S. Dist. LEXIS 106576, at *13 (N.D. Tex. July 31, 2012) (Under 548, an obligation is "a

formal binding agreement or acknowledgement of a liability to pay a certain amount **or to do a certain thing for a particular person or set of persons; esp., a duty arising by contract**." (internal citations omitted) (emphasis added).

37.     Seacret would note that the last "Fraudulent Obligation" (waive non-solicit provisions with Sales Representatives) is not an obligation "to do a certain thing" for Seacret, who is not (and is not alleged to be in the Amended Complaint) a party to these non-solicitation provisions.  This may be an obligation "to do a certain thing" for the Sales Representatives, but none of them are parties to this action.

38.     Seacret would further note that the exact obligations to be avoided is critically important to this constructive fraud action.  Seacret clearly provided value under the LSA.  So the amount of that value must be compared to the actual obligations incurred, and not some general (and unfounded) pronouncement that Seacret "stole" the Plaintiffs' business by entering a contract with what even the Plaintiffs admit are "limited rights."

39.     Despite the Supreme Court's caution against such practice, the Cause of Action One in the Amended Complaint contains "mere threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" of Section 548(a)(1)(B). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is particularly egregious considering the heightened pleading requirements of FRCP 9(b), that many courts have found to be applicable to constructive fraud claims. *See Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 118 (5th Cir. 2019) ("two of our sister circuits have held that constructive fraudulent transfer claims are subject to Rule 9(b"); *see also GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 226 n. 6 (8th Cir. 2018);  Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1297

(4th ed. 2020) ("Claims of fraudulent transfer or fraudulent conveyance are also subject to the heightened standard of Rule 9(b).").

40.     The Amended Complaint is devoid of factual support for this constructive fraud claim, let alone the who, what, when, where, and why as to the same. There are no facts related to the value WV Marketing did receive or what would constitute reasonably equivalent value for the alleged fraudulent obligations. There are no facts related to solvency. In fact, despite the fact that the Plaintiffs dismissed their breach of contract claim, the facts in the Amended Complaint related to the LSA seem to complain not that the obligations in the LSA are constructively fraudulent, but rather that Seacret has breached the LSA. Therefore, the Amended Complaint fails to state claim for constructive fraud or meet the heightened pleading standard related to the same.

   **(ii)     The Court should dismiss Cause of Action Two (TUFTA) because it states the wrong choice of law and fails to include sufficient factual allegations.**

41.     Under Arizona law, a creditor may avoid a transfer made or obligation incurred (i) without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (ii) the debtor was insolvent under various insolvency tests. Ariz. Rev. Stat. §§ 44-1004-1005. Additionally, avoidance under section 544(b) is permitted only if a transfer could be avoided under applicable law by a creditor holding an "allowable" unsecured claim. 11 U.S.C. § 544(b).

42.     Like Cause of Action One (Section 548), Cause of Action Two seeks to avoid the same "Fraudulent Obligations." However, without any explanation Cause of Action Two begins treating the Fraudulent Obligations as transfers of an interest in property, even though the Amended Complaint never pled facts to support a transfer in property and they were previously treated as (and called) obligations.  This sleight of hand is magnified tenfold later in the Amended Complaint.

43.     For the same reasons stated above, Cause of Action Two also fails to assert the allegations related to reasonably equivalent value, solvency, and the existence of a triggering creditor.

44.     The Court should further dismiss Cause of Action Two because it states the wrong applicable law. The Agreements that govern the relationship between Seacret and WV Marketing, and which the Amended Complaint is trying to avoid, contain choice-of-law provisions stating that they are governed by *Arizona* law without giving effect to choice-of-law rules.

**(iii)     The Court should dismiss Cause of Action Three (11 U.S.C. § 550) because WV Marketing has not sufficiently alleged a fraudulent transfer, which would permit recovery.**

45.     Section 550 of Bankruptcy Code provides that to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a).    Importantly, Section 550 does not apply to an avoided *obligation* at all.  *See U.S. Bank N.A. v. Verizon Comm., Inc.*, No. 3:10-CV-1842-G, 2012 U.S. Dist. LEXIS 106576, at *12-13 (N.D. Tex. July 31, 2012).

46.     As noted above, the Amended Complaint only alleges that WV Marketing granted "certain limited rights" to Seacret in the LSA.   There are no facts pled that WV Marketing transferred an interest in its property via the LSA. For example, most well pled fraudulent transfer complaints will state something like: "On November 10, 2019, the debtor transferred $1 million to its parent corporation" or "On March 3, 2018, the debtor's sister perfected a lien on

the debtor's lake house." The Amended Complaint fails to make any transfer allegations stating what asset was transferred, who transferred it or when it was transferred.

47.    WV Marketing slyly side steps this fatal defect by simply rebranding the LSA and the "Fraudulent Obligations" as the "Avoided Transfers" (Am. Compl. ¶ 90) without any explanation as to how an entire contract and the obligations thereunder have now become transfers. This cannot possibly satisfy the pleading standards of FRCP 8, much less the more stringent pleading standards for fraud required by FRCP 9(b). *See Life Partners,* 926 F.3d at 118.

48.    Section 550 of the Bankruptcy Code requires WV Marketing to plead and prove the underlying fraudulent transfer claim in order to recover. 11 U.S.C. § 550; *See also Merit Mgmt. Grp., LP v. FTI Consulting, Inc.,* 138 S. Ct. 883, 899 (2018) ("[i]f a transfer is avoided, § 550 identifies the parties from whom the trustee may recover either the transferred property or the value of that property to return to the bankruptcy estate"); *Crafts Plus+ v. Foothill Capital Corp. (In re Crafts Plus+),* 220 B.R. 331, 338 (Bankr. W.D. Tex. 1998) ("[o]nce it has been established that a qualified transfer has been made, § 550 provides for recovery"). As set forth above, there is no actionable fraudulent transfer and therefore, WV Marketing cannot recover pursuant to Section 550. Further, Section 551 does not create an independent cause of action, but rather only preserves cause of action for the Debtors. *See generally* 5 Collier on Bankruptcy P 551.01 (16th 2020).

49.    Finally, ¶ 92 of the Amended Complaint is inconsistent with Section 550. Under Section 550, the plaintiff is entitled to recover the property transferred **or** the value of the property, not both. Likewise, the value of the property is not measured from the perspective of the recipient.

## IV.     MOTION FOR MORE DEFINITE STATEMENT

50.     Pursuant to FRCP 12(e), as made applicable herein by FRBP 7012, to the extent the Court declines to compel arbitration or dismiss the Amended Complaint, for the reasons stated above, Seacret moves for a more definite statement of the causes of action asserted in the Amended Complaint.

## V.     RESERVATION OF RIGHTS

51.     Seacret does not concede that injunctive relief is warranted, attorneys' fees or exemplary damages are available, the facts asserted in the Amended Complaint are true or correct, the conditions precedent have been met, and the damages or relief requested by the Amended Complaint are available or proper.

52.     Seacret does not consent to this Court's jurisdiction or to the entry of final orders by this Court. To the extent not dismissed, Seacret requests a jury trial of all causes of action.

## VI.     <u>PRAYER</u>

Seacret respectfully requests that this Court: (i) compel the Plaintiffs and Seacret to arbitrate the claims contained in the Amended Complaint and abate this adversary case pending a final ruling resulting from arbitration of the claims contained in the Amended Complaint; (ii) in the alternative, dismiss this adversary case; (iii) in the alternative, require the Plaintiffs to file a more definite statement; and (iv) grant Seacret such other and further relief to which it may be justly entitled, both at law and in equity.

**Dated:  April 28, 2021.**

Respectfully submitted,


By: */s/ Philip Lamberson*

Phillip Lamberson
State Bar No. 0079413
plamberson@winstead.com
Stephen R. Clarke
State Bar No. 24069517
sclarke@winstead.com
Annmarie Chiarello
State Bar No. 24097496
achiarello@winstead.com
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 phone
(214) 745-5390 fax

**ATTORNEYS FOR
SEACRET DIRECT, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2021, notice of this document was electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District. I hereby further certify that on April 28, 2021, this document will be mailed via First-Class U.S. Mail and Certified Mail Return Receipt Requested to Plaintiffs at the address listed below.


*/s/ Annmarie Chiarello*
One of counsel


Steven C. Lockhart
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 2900
Dallas, TX 75201

Spherature Investments LLC
WorldVentures Marketing Holdings, LLC
Rovia, LLC
WorldVentures Marketplace, LLC
WorldVentures Marketing, LLC
WorldVentures Services, LLC
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201

Spherature Investments LLC
WorldVentures Marketing Holdings, LLC
Rovia, LLC
WorldVentures Marketplace, LLC
WorldVentures Marketing, LLC
WorldVentures Services, LLC
5100 Tennyson Parkway
Plano, TX 75024


#4818-6384-7142